LARIVERRE *v.* RAINS.

1. ESTATES IN LAND—VESTED REMAINDERS—HOW CREATED.

A remainder limited to the grantor's grandchildren, B. and C., after a life estate to A., their father, is not made contingent by a provision in the grant that, if A. should leave other children at his death, they should take the estate with B. and C., share and share alike, since a remainder limited to a class vests in such as are *in esse,* subject to open and let in those afterwards born.

2. SAME—ESTATES FOR LIFE—CONDITIONS—TERMINATION.

A grant by a married woman of the use and occupancy of one-half of a parcel of land to her husband for his life, "in case he lives with her as long as she shall live, and sees fit to occupy the same as a home," and of one-half to her son for life, "providing he sees fit to use and occupy the same so long as a home," with the further provision that the life interests shall be nontransferable, and that, subject to such interests, the grant shall be considered an absolute conveyance to the remainder-men named therein, is terminated, so as to entitle the latter to possession upon the grantor's death, by the tenants' ceasing to occupy the land for residence purposes and attempting to convey away their interests.

3. SAME—RECORDING LAWS—CURATIVE ACT.

Under the curative act (2 How. Stat. § 5727), making the record of certain defective instruments, executed in good faith "and for a valuable consideration," notice of all the rights secured thereby, a recorded but unacknowledged instrument, conveying land to the grantor's grandchildren, subject to life estates in her husband and son, and reciting a valuable consideration, is notice to subsequent purchasers from the grantor, though the consideration was paid by the son alone.

4. MORTGAGES—STATUTORY FORECLOSURE—POWER OF SALE.

Where the words, "In case of nonpayment," were omitted before the words, "of the principal sum, or of the interest thereof," in the provision of a mortgage by which a power of sale was sought to be conferred, foreclosure by advertisement was unauthorized.

5. SAME—RIGHTS OF PURCHASER.
    A purchaser upon foreclosure, whose title fails because the mortgage did not contain a sufficient power of sale, succeeds to all the rights of the mortgagee.

Appeal from Chippewa; Steere, J.   Submitted January 14, 1897.   Decided April 6, 1897.

Bill by Peter Lariverre and another, infants, by their next friend, Joseph Lariverre, against Hoel D. Rains and another, to set aside certain conveyances as a cloud on complainants' title.   From a decree dismissing the bill, complainants appeal.   Reversed.

*John W. Shine*, for complainants.

*George A. Cady*, for defendants.

MOORE, J.   This case involves the construction of a paper reading as follows:

"Memorandum of an agreement made and entered into this 8th day of March, A. D. 1883, by and between Mrs. Julia Lariverre White, of Sault Ste. Marie, Chippewa county, in the State of Michigan, of the first part, and Edward White, her present husband, and Joseph Lariverre, her son, and her grandchildren, Joseph and Peter Lariverre, children of her said son, Joseph Lariverre, and his heirs, of the second part, witnesseth that the said party of the first part, for a valuable consideration, and for love and affection for the said parties of the second part, and because she hath heretofore transferred to her other heir at law, Mrs. John Roberts, her proportion of the real estate of which she was possessed, hereby expressly agrees to and with the said parties of the second part to give them the real estate now owned by her and as follows:

"*First.* The use and occupancy as long as he shall live, in case he lives with her as long as she shall live, and sees fit to occupy the same as a residence and home, the west half of that part of private land claim No. 117, in said village of Sault Ste. Marie, now owned by her.

"*Second.* And the use and occupancy of the east half of said claim during his life, providing he sees fit to use and

occupy the same so long as a home and residence, she hereby gives to the said Joseph Lariverre, her son.

"*Third.* And hereby agrees, and by these presents conveys absolutely, subject to the above conditions, all of said private land claim one hundred and seventeen, now owned by her, to her said grandchildren, Joseph and Peter Lariverre, children of the said Joseph, her son, or to his heirs; it being expressly understood that, if her said son Joseph shall have more children at the time of his death, they shall share and share alike the said property. It is further understood that in case of her death, and the death of her said husband, before the death of her said son Joseph, then he, her said son Joseph, shall have the use and occupancy during his life of both of said parts of said claim on the terms and conditions above specified, to wit, to be used and occupied by him as a home and residence. It being expressly understood and agreed that the right to use and occupy, as above stated, is intended to be a life interest, and not transferable so far as the said Edward White and Joseph Lariverre, Sr., are concerned. It is also agreed that it is not necessary for the heirs of the said Joseph Lariverre to sign this agreement; that this instrument is to be considered and is understood to be an absolute conveyance to them, on the conditions and restrictions above herein stated, of the said private land claim one hundred and seventeen.

"In witness whereof the parties have hereunto set their hands and seals this 8th day of March, A. D. 1883."

This paper was signed by Julia Lariverre White, Edward White, and Joseph Lariverre. It was witnessed by three witnesses. There was no certificate of acknowledgment attached to it, but it was recorded, in the record of deeds and also in the record of contracts, in the office of the register of deeds, the day it was drawn. At the time the paper was drawn all of the persons whose names appear in it resided upon the land.

In January, 1889, Julia L. White deeded her son, Joseph Lariverre, the east 48 feet of said land. January 24, 1889, Joseph Lariverre deeded the 48 feet to Maria B. Doyle. January 28, 1889, Julia L. White and Edward White deeded the west 50 feet of the land to Maria B. Doyle. The complainants, Joseph Lariverre, Julia L.

White, and her husband were then all living on the land. When the above conveyances were made, Mrs. Doyle took and retained possession of the land until September, 1890, when she conveyed it to the defendants.

November 22, 1878, Julia Lariverre White made a mortgage for $50 to Mr. Trempe on land which is claimed to be the land involved in this litigation. The description reads: "All of private land claim (not heretofore deeded) number one hundred and seventeen, in the village of Sault Ste. Marie," etc. This mortgage was recorded in a book having a printed form, and, to make the record conform to the original mortgage, a pen was drawn through several lines of the printed matter. Some words usually employed in the power of sale contained in a mortgage were left out. That portion of the mortgage reads as follows:

"*Provided, always*, and these presents are upon this express condition, that if the said party of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part, the sum of fifty dollars and interest, on or before the 22d day of November, A. D. 1878, of the said sum of fifty dollars, or of the interest thereof, or any part of said principal or interest, at the time, in the manner, and at the place above limited and specified for the payment thereof, then, and in such case, it shall and may be lawful for the said party of the second part, his heirs, executors, administrators, or assigns, and the said party of the first part does hereby empower and authorize the said party of the second part, his heirs, executors, administrators, or assigns, to grant, bargain, sell, release, and convey the said premises, with the appurtenances, at public auction or vendue, and on such sale to make and execute to the purchaser or purchasers, his heirs and assigns, forever, good, ample, and sufficient deed or deeds of conveyance in law, pursuant to the statute in such case made and provided, rendering the surplus moneys (if any there should be) to the said party of the first part, her heirs, executors, or administrators, after deducting the costs and charges of such vendue and sale aforesaid. And it is further expressly agreed that as often as any proceeding is taken to foreclose this mortgage,

either by virtue of the power of sale herein contained or in chancery," etc.

It will be observed that the words, "In case of the non-payment" (of said sum of $50), are not contained in the mortgage. This mortgage was not discharged of record when Mrs. Doyle made her purchase from Mrs. White and Joseph Lariverre. The negotiations on the part of Mrs. Doyle were conducted by her husband. He obtained an assignment of the mortgage, and commenced proceedings under the statute for its foreclosure. There was unpaid on the mortgage $22.50. April 26, 1889, the land was sold by the sheriff to Maria B. Doyle for $65.75, and a sheriff's certificate issued to her. Mr. Doyle knew all about all the papers herein mentioned when he was nego-tiating for the land. The record does not disclose that defendants had knowledge of the paper of March 8, 1883, unless the recording of the paper is to be deemed notice to them. Mrs. White died before this suit was brought. The complainants commenced this proceeding to remove the cloud upon their title created by the conveyances made subsequent to March 8, 1883, and to be allowed to redeem from the mortgage which was attempted to be foreclosed. The circuit judge dismissed the bill, and complainants appeal.

The first question to be decided is, What was the estate conveyed to the complainants by Mrs. White? It was the idea of the circuit judge that the estate was that of a contingent remainder. The complainants were living when the instrument was made. They were known to Mrs. White, and named by her in the instrument, and are still living. Their interest in the land was limited by an event which, though uncertain as to when it might occur, was an event that, because all men must die, would certainly happen in the future, so that there could be no doubt about that event ultimately happening. Were it not for the fact that the instrument of conveyance pro-vided that "if Joseph Lariverre, Sr., had more children at the time of his death, they should all share alike"

with the complainants, no doubt could have arisen but what the estate created in the complainants was a vested one. 2 How. Stat. §§ 5526, 5527. The grant was not to the children who should survive their father, but it was made directly to those named, and, if the father should have other children, they, too, would share in the grant. The birth of other children would not change the character of the estate, but simply the extent of it. The rule is: A remainder limited to a class vests in such as are *in esse*, subject to open up and let in those afterwards born. 20 Am. & Eng. Enc. Law, 854; 2 Washb. Real Prop. 599. This rule should be applied here.

The next question is, Have the life estates terminated? Mrs. White died before this proceeding was begun. There was a limitation put upon the life estate of Edward White. The language used was: "The use and occupancy as long as he shall live, in case he lives with her [Mrs. White] as long as she shall live, and sees fit to occupy the same as a residence and home." The language as to Joseph Lariverre is: "And to her son, Joseph Lariverre, the use and occupancy of the * * * land during his life, providing he sees fit to use and occupy the same so long as a home and residence." The instrument provided that the estate granted to Edward White and Joseph Lariverre was not transferable. Both of these men had ceased to occupy the land, and all of the life tenants had attempted to convey their estate to Mrs. Doyle, before this suit was brought. Edward White and Joseph Lariverre were forbidden to do this by the terms of the instrument. The death of Mrs. White terminated the life estate she had conveyed to Mrs. Doyle. We think the life estates had terminated at the time this proceeding was commenced. *Ryder* v. *Flanders*, 30 Mich. 336.

The next question is, Does the curative act (2 How. Stat. § 5727) apply to the instrument made by Mrs. White, so that its recording is to be deemed as giving notice to subsequent purchasers? The circuit judge was of the opinion that the statute did not apply, because no valuable

consideration passed to Mrs. White for the making of the conveyance. The instrument on its face purports to have been made "for a valuable consideration and for love and affection." Joseph Lariverre testified that he was to furnish his mother with money, wood, and other things, as a consideration for the conveyance, and that he did furnish her these things to the amount of upwards of $200 in value. We think a valuable consideration was shown, and that the paper comes within the terms of the statute. *Healey* v. *Worth*, 35 Mich. 166.

Did the mortgage foreclosure result in giving a title to Mrs. Doyle that she could convey to defendants? A good many objections are made to the foreclosure proceedings, but we think it necessary to discuss but one of them. It has been repeatedly held that a foreclosure under the statute is an act of the party, and not a judicial proceeding, and that it is only possible when the mortgage is so framed as to authorize it. The mortgage contract containing the power of sale is the authority for the proceeding. If the power of sale is not conferred, the deed would not be valid. *Doyle* v. *Howard*, 16 Mich. 261; *Hebert* v. *Bulte*, 42 Mich. 489. The most essential part of the power of sale was omitted. We do not think Mrs. Doyle obtained title by virtue of the foreclosure sale, but she undoubtedly did succeed to the rights of the mortgagee. *Gilbert* v. *Cooley*, Walk. Ch. 494; *Johnstone* v. *Scott*, 11 Mich. 246; *Hoffman* v. *Harrington*, 33 Mich. 392; *Lee* v. *Clary*, 38 Mich. 223. Complainants should be required to pay this mortgage, and they should have the right to do so.

Decree is reversed, and one entered here in favor of complainants, with costs of both courts.

The other Justices concurred.