WALKER *v.* GILLMAN.[1]

VENDOR AND PURCHASER — SPECIFIC PERFORMANCE — DEFECTIVE TITLE—ADVICE OF COUNSEL.

> Where defendant contracted to purchase land on delivery of an abstract showing a good title clear of all incumbrances, and it appeared that complainant's title was obtained under a chancery foreclosure sale which took place more than 10 years after the entry of decree, on which state of facts defendant's counsel advised that, in view of 3 Comp. Laws, § 9751, the title was defective, there was such doubt as to the validity of the title that complainant was not entitled to enforce specific performance.

[1] Rehearing denied December 21, 1901.

Appeal from Wayne; Hosmer, J. Submitted January 30, 1901. Decided July 2, 1901.

Bill by Bryant Walker against Annie V. Gillman for the specific performance of a land contract. From a decree for complainant, defendant appeals. Reversed.

*H. E. Spalding*, for complainant.

*Walter E. Oxtoby* (*Keena & Lightner*, of counsel), for defendant.

LONG, J. On April 4, 1900, the complainant entered into a written contract with the defendant, as follows:

" Received of Mrs. A. V. Gillman five hundred ($500) dollars, to apply on purchase price of property on the southeast corner of High street and Cass avenue in the city of Detroit, Michigan, known as lot 68 and fractional lot 69 of the subdivision of Park lot 82. The balance of purchase price, forty-six hundred ($4,600) dollars, to be paid on delivery of a Union Trust abstract of title, showing a good title, free and clear of all incumbrances, and a warranty deed. Money to be refunded if title is not shown to be good.

" Dated April 4, 1900.

                                "BRYANT WALKER.

" I hereby agree to purchase the above-described property on above terms.

                        "MRS. A. V. GILLMAN."

A deed having been tendered and refused, the bill in this case is filed to compel performance of the contract on the part of defendant. The proofs were taken in open court, and that court entered a decree finding the defendant liable for the payment in accordance with the terms of the contract. Defendant appeals.

It appears that, at the time this contract was made, the title to the property described was in the Vermont Savings Bank, and was derived by it under a foreclosure in chancery in a case in which the defendants were nonresidents of Michigan. The property was in the hands of Mr. Walker, the complainant, for sale. His authority to dis-

pose of the property was given by a letter written by the treasurer of the Vermont Savings Bank, and by a telegram which he received from the bank.    Mrs. Gillman employed Mr. James T. Keena, an attorney of Detroit, to examine the title to the property; and he referred the matter to his partner, Mr. Lightner, who, after some examination, referred the matter back to Mr. Keena for his opinion.    Upon such examination the abstract showed a decree dated June 30, 1884, and a sale taking place thereunder December 1, 1897, or 13½ years after the date of the decree.    There seems to be no dispute about the facts of the case.    Mr. Lightner was called as a witness for the defendant, and testified, in substance, that Mrs. Gillman wanted the property, and, at the time the deed was tendered, was reluctant not to take it, but at the same time insisted that she wanted a perfect title, and wanted no question about that.    Mr. Keena's opinion was very decided on the question of the validity of the foreclosure proceeding,—that it was not good.    It appears that for these reasons Mrs. Gillman refused to take the property.

It is the contention of counsel for defendant that the title was not perfect in the Vermont Savings Bank, and that the bank could not convey a good title to defendant; that under the statute (3 Comp. Laws, § 9751) the decree of foreclosure could be enforced by sale only during the 10 years immediately following the entry of decree; while, on the other hand, counsel for complainant contends that the language and operation of that statute are misconceived by counsel for defendant; that our statutes of limitation are contained in two chapters, to wit, chapter 267, relating to real property, the other, chapter 268, relating to personal actions; that in the chapter relating to real property the only limitation is that no proceeding shall be maintained to foreclose a real-estate mortgage unless commenced within 15 years from the date when due, or from date of last payment; that, there being no other limitation as to the time of enforcement by foreclosure, this sale under the decree was valid to convey a good title.

In view of the further claim made by counsel for defendant, we do not deem it necessary to consider or determine in the present case the questions raised under these statutes. The agreement between the parties was that the defendant was to pay the balance of the money "on delivery of a Union Trust abstract of title, showing a good title, free and clear of all incumbrances, and a warranty deed; money to be refunded if title is not shown to be good." The proofs show that the defendant left the matter in the hands of Mr. Keena, to determine whether it was a good title. Mr. Keena is a lawyer in good standing in Detroit, a man of large experience, and evidently well qualified to examine and advise upon land titles. The defendant relied upon his judgment and advice. He advised her that the sale could not be made under the decree after the lapse of more than 10 years. It is contended by counsel for defendant that if the rejection of the title was based upon the good-faith opinion of her counsel, and if any of the questions involved were doubtful questions of law, defendant was justified in refusing to perform the contract, and was not required to incur the risk involved in a lawsuit.

We think this is a correct statement of the law. It is said in 1 Warv. Vend. p. 304:

"Nor will the courts compel the specific performance of a contract by the purchaser where the validity of the vendor's title depends upon a doubtful question of law, where others having rights dependent upon the same question are not parties to the action."

The question was before us and fully discussed in *Ford* v. *Wright*, 114 Mich. 122 (72 N. W. 197), where, after stating the facts connected with the controversy, and quoting from Warv. Vend., it is said:

"It was undoubtedly the intention of Mr. Wright, in requiring a Burton abstract and a perfect title, to insure the getting of a title that would satisfy a prospective purchaser, upon an inspection of the abstract, that the title was good. The title which was presented to him was of

such a character as to justify Mr. Post in expressing the opinion that there was a reasonable doubt about it. Under the conditions shown by the record, we do not think Mr. Wright was bound to accept the title offered him."

We think the above case is decisive of the present. The good faith of Mr. Keena does not seem to be questioned, and it appears that the defendant was anxious and willing to take the land if Mr. Keena determined that the title was good. She was not bound to take it, however, unless the title was "shown to be good." In the opinion of Mr. Keena, it was not shown to be good, and the defendant was justified in relying upon that opinion.

The decree below must be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.